# German Insurance Company of Erie, Pennsylvania, to Use of William Varnum, Receiver, Plff. in Err., *v.* Samuel A. Davenport.

D., who was the attorney for an insurance company, mortgaged land to the company and afterward offered to assign another mortgage to the company in exchange. The offer was referred to the finance committee of the company, and accepted with instructions to its secretary to satisfy the former mortgage. D. delivered the latter mortgage to the company's president in the presence of the secretary, who gave D. a receipt, acknowledging the payment of the former mortgage and authorizing D. to satisfy it of record. *Held*, that these facts constituted a good defense to a scire facias on the former mortgage.

(Argued April 27, 1887. Decided May 9, 1887.)

July Term, 1886, No. 5, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to

the Common Pleas of Erie County to review a judgment on a verdict for the defendant in an action of scire facias sur mortgage. Affirmed.

The facts as they appeared at the trial before BROWN, J., are stated in his charge to the jury, which was as follows:

On the 16th day of February, 1874, the defendant, S. A. Davenport, gave to the German Insurance Company a mortgage to secure the payment of an indebtedness of $20,900, including, I think, according to the testimony of Mr. Davenport, 10 per cent interest for one year.

This indebtedness was the sum of certain debts owing, respectively, by the defendant and one T. M. Walker, to the German Savings Bank, and which had in some way—how, it is not material to the present issue—become the property of the German Insurance Company. The German Insurance Company became embarrassed on the second day of September, 1874, and made an assignment for the benefit of creditors. Some time after the making of this assignment, William Varnum was duly appointed receiver, and this suit is brought in the name of the company, to enforce the payment of the mortgage I have mentioned.

The record of the mortgage given in evidence makes out the case of the plaintiff, and throws upon the defendant the necessity of satisfying you by a fair preponderance of the evidence of the existence of such a fact or such a state of facts as in law exempts him from liability on the mortgage.

The defendant avers that this mortgage is fully paid, and if the evidence satisfies you that such is the fact, then your verdict should be in his favor; otherwise, it should be in the favor of the plaintiff. The defendant testifies and introduces other evidence to show that on the 26th of August, 1874, he was the real owner of a mortgage of $35,000, made by one John F. Miles to Mrs. Rebecca Thompson; that he, the defendant, called the attention of the president of the insurance company to the last-mentioned mortgage, and proposed to procure an assignment of the same, to be made to the company, of so much of the first instalments of the same as should be sufficient to satisfy the mortgage now in suit.

That the president, Mr. Schlaudecker, referred the matter to the finance committee, who, if the testimony of Mr. Schlau-

decker is believed, had the authority to act in the premises; that the finance committee made inquiry and came to the conclusion that the change of security was equally good, if not better than the mortgage in suit; that thereupon the finance committee adopted a resolution authorizing Mr. Eichenlaub, the secretary, to satisfy the mortgage in suit in consideration of the assignment to the company of the mortgage given by Mr. Miles to Mrs. Thompson; that in pursuance of the resolution of the committee Mr. Davenport did procure the assignment of the Miles mortgage to the insurance company, and delivered the mortgage with the assignment thereon to the assistant secretary, or the president of the company, at the office of the company; that afterwards Mr. Eichenlaub, the secretary of the company, and in pursuance of the resolution of the finance committee signed and delivered to Mr. Davenport the receipt given in evidence, which purports to be a receipt of the mortgage now in suit.

Now, if you find from the evidence that the facts are as claimed by the defendant, and that the transaction was free from the taints of fraud upon the part of the defendant, then your verdict ought to be in his favor; and the fact that the officers of the company neglected to record the mortgage or were negligent in the discharge of their duties to the stockholders and creditors of the company cannot prejudice the defendant.

[The question is altogether for you; but I think I may say this with propriety,—that you will probably conclude from the evidence that the transaction did, in form, occur substantially as claimed by the defendant. I say you will probably have but little difficulty in coming to that conclusion, because so far as that is concerned there has been little, if any, controversy.]

Should you so conclude, then the question that remains for you to settle is simply this: Was the transaction an honest one, so far as Mr. Davenport is concerned? The discussion in this case has taken a very wide range. I call your attention to matters that, in my judgment, are controlling questions in the case, and after giving attention to which, you may discard other matters that have been thrown into the case in argument.

I repeat that should you conclude that the transaction actually took place in the form and manner as stated, then the remaining question for you to settle is: Was the transaction an honest one, so far as Mr. Davenport is concerned?

Whether the officers of the insurance company were or were

not guilty of fraud in the exchange of the securities ought not to prejudice Mr. Davenport, unless he was cognizant of such fraud, and a party to, or assisting therein, or at least assenting thereto. If indeed he was in collusion with the officers of the insurance company, and assisted in or procured the exchange of the securities for the purpose of defrauding the creditors of the company, then the transaction was void and the defense fails.

[But fraud must be shown by the party alleging it, and ought not to be found, except upon direct evidence or proof of facts leading legitimately to the conclusion that fraud actually exists.]

Is such evidence laid before you in this case? The date of the transaction is the 26th of August, 1874. Did Mr. Davenport know that the company was then insolvent? What is the evidence that he knew this? I recall no direct evidence to that effect. I may have overlooked some item of testimony, and if so, it will be your duty to supply it.

Some of the officers testify that, although they knew the capital of the company was impaired, they actually did not then know that the company was insolvent. It is a fact that Mr. Davenport was one of the attorneys of the company, having no interest in it as a stockholder or being otherwise connected with it than as an attorney. Does not this fact affect him with notice of its financial condition? Is it customary for persons in business, who have an attorney that they are accustomed to consult, to inform their attorney? Or is it the business of the attorney to be informed as to the financial condition of his clients?

[As bearing on the question of the character of the transaction, I think it is proper to refer to the defendant's testimony, that the Miles mortgage was a better security than the mortgage in suit. Was this true? This opinion has been given by the defendant and by some of the defendant's witnesses, and has not been controverted. If it be true that the security given in exchange for the mortgage in suit was a better security than that mortgage, it may be difficult to see how the creditors of the company were, or could be, defrauded.]

These questions of facts are for your determination.

The plaintiff has asked us to instruct you as indicated in these points:

"First, that if the jury believe from the evidence that the re-

ceipt or paper of the 26th of August, 1874, given in evidence by the defendant, purporting to be signed by Joseph Eichenlaub, as secretary of the company, was given by him to the defendant, without receiving anything, or money for it, or without the company, whose secretary he was, having received anything for it or before he signed it, it will not avail the defendant as a defense to this action."

This point is affirmed.

"Second, if the jury believe from the evidence that the proposition of the defendant to the plaintiff, the German Insurance Company, to discharge his mortgage and indebtedness to it by substituting another mortgage in lieu or in place thereof, was made by him to the company, and that this substitution was not actually made, then the mere offer to make such substitution, even if accepted by them, would not avail the defendant as a defense to this action."

This point is affirmed, as we understand it to mean that it would be an unconsummated matter.

"Third, that the resolution of the finance committee of August 26, 1874, authorizing their secretary, Joseph Eichenlaub, to receive in lieu of or in payment of the mortgage of the defendant the assignment of so much of the first payment of a mortgage alleged to have been made by one John F. Miles to Rebecca Thompson as would satisfy the mortgage of the defendant, and that the defendant did not deliver to said Eichenlaub said assignment or offer to deliver it to him, and that said Eichenlaub did not receive from said defendant, nor from anyone for him, said assignment of mortgage, and the said Eichenlaub did not discharge said mortgage of record, then it would not be a transaction consummated, and would be entirely inoperative, and would be no defense to this action."

This third point is answered in the negative.

"Fourth, that the finance committee, in the absence of express authority conferred upon them by the authority of incorporation, would have no power to make such an agreement for the discharge of the mortgage of the defendant; and, even if it had, the authority conferred upon its secretary, by its resolution, must be strictly pursued by him; and in order that the defendant can avail himself of this defense, he must show affirmatively that the terms of the resolution were complied with."

We answer this point by refusing so much of it as claims that

the finance committee, in the absence of express authority conferred by the authority of incorporation, would have no power to make the arrangement for the discharge of the mortgage of the defendant, and affirm the remainder of the point.

"Fifth, the resolution provides as follows: '*Resolved,* That Joseph Eichenlaub, Jr., be directed to enter satisfaction on the mortgage of S. A. Davenport recorded in Mortgage Book Q, page 181, and accept the assignment of a sufficient amount of the first payment of a certain mortgage made by John F. Miles to Rebecca Thompson and dated August 25, 1874, in lieu thereof.'

"The defendant claims and sets up the receipt or paper of the 26th of August, 1874, as a defense of this action. The court is requested to charge the jury that this paper is not a compliance with the resolution, unless the jury are satisfied from the evidence that the defendant delivered to said Eichenlaub, or someone for him, or to the company, the assignment of the mortgage as set out in said resolution."

This point is affirmed, but in connection with its affirmance we call your attention to what we have said on this subject in the general charge.

"Sixth, if the jury believe the evidence of Joseph Eichenlaub, no such assignment was ever delivered to him or exhibited to him or received by him from the defendant, nor did he discharge the mortgage of record nor do any other act touching it, except to sign the paper or receipt of the 26th of August, 1874."

This point is answered by reference to the general charge.

"Seventh, if the jury believe the evidence of the defendant, then he did not deliver the assignment to said Eichenlaub; nor does he testify to whom he delivered it, nor that the company received it from him in pursuance of said resolution."

This point is also answered by reference to what we have said in the general charge.

The plaintiff's statement, the resolution of the finance committee, and the receipt referred to in the charge, were respectively as follows:

"The defendant avers that the mortgage is fully paid; and if the evidence satisfies you that such is the fact, then your verdict should be in his favor; otherwise, it should be in favor of the plaintiff. The defendant testifies, and introduces other evi-

dence to show, that on the 26th of August, 1874, he was the real owner of a mortgage of $35,000, made by John F. Miles to Mrs. Rebecca Thompson; that he, the defendant, called the attention of the president of the insurance company to the last named mortgage and proposed to procure an assignment of the same to be made to the company of so much of the first instalments of the same as should be sufficient to satisfy the mortgage now in suit; that the president referred the matter to the finance committee, who, if the testimony of the president is believed, had authority to act in the premises; that the finance committee made inquiries, and came to the conclusion that the change of security was equally good if not better than the mortgage in suit; that therefore the finance committee adopted a resolution authorizing Mr. Eichenlaub, the secretary, to satisfy the mortgage in suit in consideration of the assignment to the company of the mortgage given by Mr. Miles to Mrs. Thompson; that in pursuance of the resolution of the committee Mr. Davenport did procure the assignment of the Miles mortgage to the insurance company, and delivered the mortgage with the assignment thereon to the assistant secretary, or the president of the company, at the office of the company; that afterwards the secretary of the company, and in pursuance of the resolution of the finance committee, signed and delivered to Mr. Davenport the receipt given in evidence, which purports to be a receipt of the mortgage now in suit."

The resolution: "*Resolved,* That Joseph Eichenlaub, Jr., be directed to enter satisfaction on the mortgage of S. A. Davenport, recorded in Mortgage Book Q, page 181, and accept assignment of the first payments of a certain mortgage made by John F. Miles to Rebecca Thompson, and dated August 25, 1874, in lieu thereof."

And the receipt:

"Know all men by these presents, that S. A. Davenport has fully paid and satisfied the mortgage given by him to the German Insurance Company for the sum of $20,900, dated February 16, 1874, and recorded in Mortgage Book Q, page 181, on the 17th day of February, 1874, and the said mortgage, with bond accompanying the same, is hereby satisfied, and the recorder of Erie county is hereby authorized to enter satisfaction of the same of record. In testimony whereof the president and directors of the said German Insurance Company have here-

unto affixed the seal of their said company at Erie, on the 26th day of August, A. D. 1874.

J. Eichenlaub, Jr.,

Secretary German Insurance Company."

Verdict and judgment were for the defendant.

The assignments of error specified the portions of the charge inclosed in brackets, and the answers to the plaintiff's third, fourth, fifth, sixth, and seventh points.

*John P. Vincent,* for plaintiff in error.—The court should have laid before the jury all the circumstances, called their attention to them, and to the points in them, demanding their careful attention as bearing on the good faith of the defendant in this transaction with his client, and told them that they must carefully scrutinize all the facts brought out in the evidence, and, if necessary, look beyond and under any and all contrivances, if they existed, by which a wrong was done the plaintiff.

In the investigation of a question of fraud the court should be liberal in the introduction of evidence tending to disclose the true nature of the transaction; and it matters not how much the parties may have complicated it with dealings apparently conducted in good faith, or how many conveyances to or from strangers may be introduced for the purpose of covering the fraud from the view of those to be affected by it; the law condemns it, and justice, although blind in obedience to the injunction which forbids her to "respect persons in judgment," and commands her to "hear the small as well as the great," proceeds in her investigations with a scrutinizing eye that looks under and beyond all contrivances intended to "double hatch the cheat." Garrigues v. Harris, 17 Pa. 344–350.

But, even if no evidence of actual fraud on the part of the defendant exists, there is abundant evidence in the case to forbid him to set up the defense he does to the mortgage in suit, growing out of his gross neglect of duty to the company as its attorney.

In Stannard v. Ullithorne, 10 Bing. 491, the court held an attorney liable in damages to his client for allowing him to execute an unusual covenant "without explaining the liability thereby incurred," and he was held liable, notwithstanding his client knew of the fact in respect to which he afterwards incurred the liability.

*Uberrima fides* is what the law demands from an attorney in all his acts towards his client, and the attorney is held strictly responsible to the client for injuries resulting from neglect of professional duties. Riddle v. Poorman, 3 Penr. & W. 224; Hunter v. Caldwell, 10 Q. B. 69, 16 L. J. Q. B. N. S. 274; Hopgood v. Parkin, L. R. 11 Eq. 74; Miller v. Wilson, 24 Pa. 114; Greenfield's Estate, 14 Pa. 489, 505, 506.

There is no evidence that the mortgage in suit was not a good security, even if the two and one half lots were taken out; and coupled with the personal bond of the defendant it was a perfect security. What motive, then, could the insurance company, on the eve of bankruptcy, as the evidence shows, have to give up this security and take another, that involved defendant in no personal obligation whatever to the company (for his name was not in or on the Miles mortgage at all), unless all the officers of the company were misled as to the true effect and at least possible consequences of the transaction, and relied on his promise to make it equally as good as the old one?

It was clearly the duty of the defendant to fully explain to the president of the company, to the secretary, and to the finance committee, the exact difference between the two securities; that by canceling the bond he was absolved from all personal liability to the company for the debt he owed, and that so much of it as could not be collected from the land would be lost.

It was his duty to see that the security he gave the company in the place of that which it held against him was made as good in every way as that which he induced them by his promise to give up.

The court laid down the rule, as to evidence required to show fraud, too broadly; it was calculated to induce the jury to believe that the very fraud charged must be directly proved— and that is not the law.

The law is, as stated by the court, ordinarily correct; but in a case between attorney and client further explanation ought to have been given the jury as to the extent that fraud could be inferred from facts and circumstances, and need not be proved as stated by the court, in cases like this. Greenfield's Estate, 14 Pa. 489, 505, 506.

The court gave undue prominence to the defendant's evidence throughout the entire charge; and this, according to Reber v. Herring, 115 Pa. 599, 8 Atl. 830, was error.

*J. Ross Thompson* and *Allen & Rosenzweig* for defendant in error.

PER CURIAM:

This was a scire facias on a mortgage executed by the defendant. The defense is payment. It was purely a question of fact. The evidence given to prove the payment was submitted to the jury in a clear and correct charge. No one of the specifications of error is sustained.

Judgment affirmed.